UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MICHAEL TROINA,

                     **Civ. No.**

                Plaintiff,

    -against-                        **COMPLAINT**

THE CITY OF NEW YORK, THE CITY OF
NEW YORK FIRE DEPARTMENT, FIRE
COMMISSIONER DANIEL A. NIGRO       **(Jury Trial Demanded)**
(In His Official and Individual Capacity),
THOMAS BAMBURY, RYAN BRITO,
JOHN OLSEN, PATRICK BOUMAN,
NEIL OTTRANDO, GREG HANSEN,
DEVIN MCGRATH, [FNU] BELKHAM,
[FNU] CAPELLI, LT. [FNU] DIDIO,
LT. JOSEPH MONFERATO, LT. STEVEN
FROLENZA,  CHIEF ANTHONY DE VITA,
CHIEF MICHAEL MASAUCCHI,
and STEVEN ROGERS

                Defendants.
-----------------------------------------------------------------X

Plaintiff, MICHAEL TROINA ("Plaintiff" or "Troina"), by and through his attorneys, DEREK SMITH LAW GROUP PLLC, complaining of Defendants, jointly and severally, herein respectfully shows to this Court and alleges the following:

## NATURE OF THE CASE

1.     This is an action to remedy discrimination and brought by Plaintiff Michael Troina pursuant to the provisions of the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981"), and pursuant to Article I, §11 of the New York State Constitution for the violation of his due process and other constitutional rights to be free from racial discrimination.

2.     This is further an action to in which the Plaintiff seeks relief for Defendants' violations, under color of state law, of his rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, the First,

1

Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of New York

3.     Plaintiff also complains pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C § 2000e et. Seq. ("Title VII"), and to remedy violations of the laws of the State of New York, based upon diversity and the supplemental jurisdiction of this Court pursuant to Gibb, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking relief and damages to redress the injuries Plaintiff has suffered as a result of being discriminated and retaliated against by his former employer on the basis of race, color, sex, national origin and orientation.

4.     Defendants engaged in a pattern and practice of flagrant discrimination against new firefighters, also known as "Probies."

5.     The Defendants had prior knowledge of these horrific acts from other instances of discrimination against "Probies." By way of example, see *Baraka Smith v. The City of New York*, EDNY 14 CV 4982.

## JURISDICTION AND VENUE

6.     Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and 1343 and the Civil Rights Act of 1866 and 1871 which give this Court jurisdiction for each statute; the damages; exclusive of interest and costs in this instance exceed that of all lower courts, and this Court's pendent jurisdiction is also invoked.

7.     The unlawful employment practices alleged herein occurred wholly or in part, in the jurisdiction of the Southern District of New York.

## PARTIES

8.     Plaintiff Michael Troina is an individual Hispanic American male who resides in the State of New York, County of Queens.

9.      Defendant, The City of New York, is a municipal corporation, incorporated in the State of New York, and resides in all five boroughs of New York City. The causes of action in this case arise within the County and City of New York

10.     The Fire Department of the City of New York has their headquarters in Brooklyn, New York, and has its principal place of business at 9 Metro Tech Center, Brooklyn, New York 11201, and operates numerous firehouses throughout the City of New York.

11.     A substantial and significant portion of the events took place at Firehouse Engine 7-Ladder 1 which is located at 100 Duane St., New York, New York 10007.

12.     Defendant Fire Fighters (hereinafter also referred to as "Fire Workers") Thomas Bambury, Ryan Brito, John Olsen, Patrick Bouman, Neil Ottrando, [FNU] Belkham, Greg Hansen, Devin McGrath, [FNU] Capelli, Steven Frolenza, and Steven Rogers were and are Firefighters with the City of New York and are residents of New York State.

13.     At all times material, Defendant Fire Workers were senior to Plaintiff, and possessed the ability to control and manage Plaintiff's employment.

14.     At all times material, the above-mentioned Firefighters were stationed at Ladder 1 and/or Engine 7.

15.     Defendant Lieutenant Firefighter Didio was and is a Firefighter with the City of New York and is a resident of New York State.

16.     Defendant Firefighter Anthony De Vita was and is a Firefighter with the City of New York and is a resident of New York State.

17.     Defendant Firefighter Michael Masaucchi was and is a Firefighter with the City of New York and is a resident of New York State.

18.     Defendant Fire Commissioner Daniel Nigro was and is the
Commissioner of the Fire Department of New York and is a resident of New York
State.

## PROCEDURAL HISTORY

19.     On or about February 15, 2018, the EEOC issued a Right to Sue.

20.     This action has been filed within 90 days of the EEOC issuing a Right to Sue.

## PRELIMINARY STATEMENT

21.     Plaintiff Troina, a Hispanic American, pursued his dreams and entered the
        FDNY Academy where he later graduated from on or about November 7,
        2015.

22.     On or about November 8, 2015 Plaintiff began working as a new firefighter
        for Defendants.

23.     As a new firefighter, Defendants assigned Plaintiff Troina to Ladder Company
        One ("1") which shares its house and responsibilities with Fire Engine
        Company Seven ("7") (hereinafter referred to as "Ladder 1" or "L1, E7").

24.     At all times, Defendants, both Corporate and Individual, held supervisory
        authority over probationary firefighters (hereinafter referred to as "probies")
        such as Plaintiff Troina.

25.     This case involves the systematic unlawful sexual orientation discrimination,
        racial discrimination, national origin discrimination, gender discrimination,
        assault and battery, hostile work environment, retaliation and unlawful
        termination of Plaintiff Troina by the Defendants.

26.     Plaintiff Troina was singled out time and time again on account of his race and
        national origin as a Hispanic American male as well as perceived
        homosexuality. Plaintiff Troina was further threatened with physical violence

4

if he dared to report any incident of assault, battery, harassment or discrimination to the FDNY's Equal Employment Opportunity Office ("EEO").

## FACTS

27. On or about November 5, 2015, upon graduation from the FDNY Fire Academy, Plaintiff Troina was given his assignment for active duty to Ladder 1, Engine 7 located at 100 Duane St, New York, New York 10007.

28. At all material time Defendant ROGERS was senior to Plaintiff and held supervisory authority over Plaintiff. At all material times, Defendant ROGERS held the title of "Head of House" and had a number of managerial duties and responsibilities.

29. In or around November 2015, Firefighters KLIPP, FRANZRAB, DEBIASE and Defendant ROGERS, made Plaintiff eat orange juice that he brought for his breakfast with a fork from 12 different plates. These Defendants forced Plaintiff to wash the plates afterwards.

30. In or around March 2016, Defendants McGRATH and BAMBURY discriminated against Plaintiff when they told Plaintiff that he could not do the job like the other **white** firefighters could because Plaintiff is of Hispanic national origin and race.

31. Defendant OLSEN is, and at all material times was, senior to Plaintiff and held supervisory authority over the Plaintiff.

32. Defendant BAMBURY is, and at all material times was, a senior Fire Fighter, with managerial responsibility over Plaintiff.

33. In or around April 2016, Defendant OLSEN discriminated against Plaintiff when he tried to coerce Plaintiff to join him and the other Defendants to a strip

club. When Plaintiff refused, OLSEN told Plaintiff to "**stop being a fucking loser**" and called Plaintiff a "**faggot**".

34. Defendants would regularly harass Plaintiff by encouraging him to have sex with a stripper.

35. At all material times, Defendant OLSEN discriminated against Plaintiff on account of Plaintiff's perceived sexual orientation. Defendant OLSEN referred to Plaintiff as a "**closet homo**" for the duration of his employment with the Defendants.

36. On or about June 15, 2016, Plaintiff was told by fire worker Porcello that other fire workers, including officers, were calling Plaintiff a "**faggot**" and "**gay**" during a FDNY Memorial volleyball outing. Thereafter, Plaintiff was purposefully excluded by all named Defendants from the day's activities due to the discriminatory belief that Plaintiff was homosexual.

37. On or about the next day, June 16, 2016, when Plaintiff arrived at work, Firefighter ALBERTI told Defendant BELKHAM to "**Do an impression of Troina.**" Plaintiff watched as BELKHAM impersonated him saying, "**Hey my name is Troina, I'm a faggot and I've never seen a girl's pussy before.**" While doing the impression Defendant BELKHAM was flailing his arms around and basing the impression of Plaintiff on negative stereotypical caricatures of hyper-feminine homosexual males. Firefighter ALBERTI and Defendant BOUMAN watched, laughed, and otherwise actively aided and abetted the discriminatory actions against Plaintiff.

38. At all material times, Defendants BELKHAM, and BOUMAN were senior to Plaintiff, and held supervisory authority, and possessed managerial responsibilities over the Plaintiff and others similarly situated.

39. Plaintiff notified Defendant Lieutenant Joseph MONFERATO about the degrading and discriminatory incident. Defendant Lieutenant MONFERATO then told Plaintiff that the discrimination targeting Plaintiff's national origin and sexual orientation was **"In good fun, and to not take it too hard"**.

40. At no point in time did Plaintiff consider these abusive and discriminatory action to be a joke. Plaintiff made management aware that the discriminatory conduct was unwelcome.

41. Thereafter, Plaintiff was constantly ridiculed and subjected to increasingly egregious harassment and discrimination based on his perceived sexuality by the Defendants.

42. Discriminating rumors spread around the firehouse that Plaintiff was "**gay**" and a "**virgin.**".

43. At all material times, Plaintiff suffered mental and emotional stress due to the constant discrimination and ridicule by Defendants.

44. In or around June 2016, Defendant OLSEN found out that Plaintiff competed in video game tournaments. Defendant OLSEN told everyone in the fire house. This escalated the discrimination and fostered a pervasively hostile work environment towards Plaintiff.

45. In addition, Defendant OLSEN and ROGERS and Firefighter KLIPP called Plaintiff "**a loser with no life**" and that he "**can't be a retarded kid forever.**"

46. In or around the summer of 2016, when the game "Pokemon Go" launched, Firefighters KLIPP and FRANZREB and Defendant BRITO would gather in the kitchen and berate Plaintiff over whether he "was going to go play some 'Pokemanz' Go, because he has no life."

47. A few days later Plaintiff came in to work to find a fake sign-up sheet for an

event called "**Pokemon Go Hunting with Troina and his Faggot Friends.**" Another fire worker who made the list also put Plaintiff's phone number on it.

48.     At all material times, other employees of Corporate Defendants, such as the members from the Ladder 10 fire house and the other "probie" in the house named Robert Paolillo also had Pokemon Go on their phones but were not put through the same discriminatory suffering as Plaintiff.

49.     Defendants purposefully discriminated against Plaintiff due to their perception of Plaintiff's sexual orientation.

50.     In or around mid-July 2016, Defendant ROGERS called Plaintiff "**a complete lost retard**" in front of all the fire workers in the house. By promoting such foul behavior, as Head-of-House, Defendant ROGERS displayed his approval of the discrimination Plaintiff suffered every day of his employment with the Defendants.

51.     Soon thereafter, Defendant OLSEN and Firefighter ALBERTI called Plaintiff "**autistic**" and **"retarded,**" discriminating against Plaintiff based on perceived disability.

52.     The discrimination that Defendants perpetrated upon Plaintiff was done with the full knowledge of the Supervisor and Head of the House, Defendant Steve ROGERS as well as the Lieutenants who supervised the firehouse.

53.     During the course of his employment with Defendants, Plaintiff became afraid to ask any questions of his superiors or engage them in any way. Plaintiff was left with no guidance and had to figure out things all by himself.

54.     When Plaintiff asked for help from other Fire Workers at Engine 6 during days off to switch tours, Defendant BOUMAN and Firefighter ALBERTI became furious at Plaintiff and prevented him to ask for outside help.

55. When Plaintiff was home and got messages from the Defendants, Plaintiff's chest would hurt. Plaintiff would have panic attacks on account of all the discrimination he faced at work.

56. At all material times, Plaintiff lived in constant fear of the retaliation that would inevitably follow.

57. Plaintiff suffered severe mental trauma during his employment with the Defendants. Plaintiff became depressed every time he had to work.

58. From in or around December of 2015, until his unlawful termination, Plaintiff would sit in his car and cry prior to beginning work; fearful of what he would be put through that day.

59. On or about August 16, 2016, due to the constant ridicule and discriminatory belief that Plaintiff was homosexual, Plaintiff suffered a severe anxiety attack and checked himself into the Counseling Service Unit of the FDNY.

60. The Counseling Service Unit told Plaintiff to take two weeks off.

61. All throughout the time Plaintiff was on leave, Plaintiff was scared of the retaliation he would have to endure upon his return.

62. Plaintiff returned to work on or about September 11, 2016.

63. On or about October 1, 2016, Plaintiff attended a funeral with the rest of the fire workers. Plaintiff had to work later that day, so after the ceremony was over, Plaintiff left and went to the Ladder 1 fire house.

64. Defendant BOUMAN called Plaintiff on the fire house phone and sent Plaintiff text messages stating "**shit bag fucking move.**"

65. After the funeral, Defendants BOUMAN, and BRITO went to the fire house heavily inebriated and ganged up on Plaintiff for daring to leave the funeral early. Defendant BOUMAN and BRITO kept pressuring Plaintiff to **quit on**

**account of his race and his perceived homosexuality.**

66.     Meanwhile, there were other **white** firefighters who also left early, such as JOSEPH JURGENS and JOHN LEISCH, while others did not even attend the funeral, such as OLSEN. However, those Fire Workers weren't reprimanded in such a manner as Plaintiff. Yet again, it was only a problem that Plaintiff did not want to stay and drink with the perpetrators of his discrimination.

67.     On or about October 12, 2016, Plaintiff's car was vandalized with peanut butter in every door handle, oil and soap was plastered over the entire car, garbage and papers were smashed into the windows while ceiling tiles, boxes and wires were situated to blocked access to his vehicle all around.

68.     On or about October 17, 2016, Defendant BAMBURY interrupted a conversation Plaintiff was having with a covering Chief (name unknown) and told Plaintiff "You know what pisses me off, when there is there no toilet paper in the bathroom". Plaintiff proceeded to apologize to Defendant BAMBURY telling him "I'm sorry, I just got in." Plaintiff gets up to go get the toilet paper and Defendant BAMBURY stated, "**Yeah that's right you better get it boy!**" BAMBURY offended Plaintiff and Plaintiff stated to BAMBURY "You don't need to be rude about it".

69.     Defendant BAMBURY started puffing his chest while chasing Plaintiff around the house yelling at Plaintiff "**What did you say? You're giving me lip boy!**" all the while trying to fist-fight Plaintiff. Plaintiff feared for his life from the assault he suffered at the hands of Defendant BAMBURY and was too terrified to respond in any way.

70.     Plaintiff eventually made it to the bathroom where Defendant BAMBURY stated to Plaintiff "**You are a real piece of shit you know that…you Spic.**"

Plaintiff again did not respond but proceeded to show Defendant BAMBURY that there was toilet paper in the bathroom.

71.  Luckily at that moment the engine received a call to go on a run and Defendant BAMBURY left the firehouse. Plaintiff, while crying on account of BAMBURY's discriminatory remarks, locked himself in the bathroom and called his father. Plaintiff told his father that he no longer felt "safe" in the fire house.

72.  At all material times, Defendant BAMBURY has twelve years of seniority on Plaintiff and held direct supervisory authority over Plaintiff.

73.  At all material times, Defendant BAMBURY openly bragged about, and stated details about the steroid cycle he uses while working for Defendants in the fire house.

74.  Plaintiff complained to Defendant CAPELLI about the incident. Defendant CAPELLI told Plaintiff that Defendant BAMBURY does not know how to speak correctly and rarely displays proper professionalism. Defendant CAPELLI failed to act to mitigate the discrimination against Plaintiff.

75.  At all material times, Defendant CAPELLI was senior to Plaintiff and possessed managerial control over Plaintiff.

76.  On or about October 24, 2016, a week after the toilet paper incident, Defendants BAMBURY, OTTRANDO, HANSEN and the CAPELLI told Plaintiff to "**never go to the EEO**" and that he **"would be a shit bag if he did.**" Furthermore, Defendant OTTRANDO told Plaintiff that the named Defendants would **"make other firefighters lives miserable if they ever go to the EEO.**"

77.  In or around the end of October 2016, Defendants placed a written sticker over

Plaintiff's gear hook that read "**Troina is a bitch**" in reference to Plaintiff's feminine qualities, perceived sexual orientation and gender.

78.    On or about October 29, 2016, the Defendants tore Plaintiff's hook off the wall.

79.    Later that day, Defendants put Plaintiff's FDNY gear on a filthy apparatus on the ground floor near where there are engine oil leaks from the firetruck.

80.    Defendants actively encouraged the house-cats that lived in the fire house to sleep on Plaintiff's FDNY gear.

81.    The above was done to discriminate against Plaintiff based on perceived sexual orientation discrimination, gender discrimination, racial discrimination and national origin discrimination, and to retaliate against Plaintiff for the Defendants' belief that he would contact the EEO.

82.    On or about November 7, 2016, Plaintiff's car was hit by a civilian while parked in front of the fire house. When Defendant BAMBURY saw it he started laughing out loud and told Plaintiff "**that is exactly what Plaintiff deserves to happen to him.**" BAMBURY's egregious remarks prompted Plaintiff to ask Defendant BAMBURY "to stop being so damn rude". At this point Defendant BAMBURY slammed his FDNY gear on the ground and challenged Plaintiff to a fist-fight telling Plaintiff "**let's go, let's fight**" in front of all other Defendants. The other Defendants actively encouraged Defendant BAMBURY's assault.

83.    Plaintiff walked away from this altercation quietly, despite BAMBURY's attempts to draw Plaintiff into a fist-fight.

84.    NYPD was called to report the accident involving Plaintiff's vehicle.

85.    After giving the NYPD his insurance information Plaintiff went inside the fire

house where Defendant BAMBURY proceeded to follow Plaintiff around the house telling Plaintiff "**Get a fucking broom and sweep the house Troina.**"

86. At the verge of tears, Plaintiff told Defendant Lieutenant DIDIO that Plaintiff wanted to call EEO, and that he could not take this type of discriminatory treatment anymore.

87. Soon thereafter, after telling Defendant Lieutenant DIDIO, Plaintiff started thinking of how the other Defendants had told him to never go to the EEO and that his life would be miserable if he went, so Plaintiff decided to tell Defendant Lieutenant DIDIO that he no longer wanted to go to the EEO. Plaintiff did not want to endure further retaliation.

88. Plaintiff also advised Defendant Lieutenant Steven FORLENZA that he was facing discrimination and retaliation. Defendant FORLENZA assured Plaintiff he would take care of the discrimination, retaliation and hostile work environment that Plaintiff was forced to endure.

89. Defendants Lieutenant FORLENZA and Lieutenant DIDIO never addressed Plaintiff's complaints, and allowed said discrimination, retaliation and hostile work environment to continue against the Plaintiff despite witnessing the severity and consistency of the unlawful and discriminatory abuse first-hand.

90. On or about November 15, 2016, Plaintiff went to Engine 6 as part of Plaintiff's regular cross training.

91. On or about November 15, 2016, Captain KEITH gave Plaintiff a 30 day "no 24 hour shift" punishment. When Plaintiff asked why he was being punished, the Captain stated "**I only write what I hear**" even though everyone in the house knew Plaintiff was being discriminated against by the Defendants on account of his perceived sexual orientation, gender, color, and national origin.

92. During Plaintiff's time in Engine 6, Plaintiff worked all overtimes and got along well with all the fire workers of the house.

93. On or about December 7, 2016, FDNY's EEO called Plaintiff about the incident with Defendant BAMBURY.

94. On or about December 18, 2016, Captain KEITH gave Plaintiff an "extended probation" document to sign, which stipulated several false claims against Plaintiff.

95. Plaintiff felt pressured by Defendants to sign this document because he feared further discrimination and retaliation.

96. On or about December 20, 2016, Defendants' employee covering Captain CIANNI, called Plaintiff and instructed him to go to the FDNY Headquarters at Metro Tech Center the next day.

97. On or about December 21, 2016, Plaintiff was terminated by Defendants DEVITO and MASAUCCHI, even though the FDNY union delegate was not notified that Plaintiff was there.

98. Plaintiff was unlawfully terminated without any due process in retaliation for making protected complaints.

99. The actions of Corporate Defendants CITY OF NEW YORK and THE NEW YORK CITY FIRE DEPARTMENT, and the actions of all named Defendants, were inappropriate, unlawful and against FDNY Regulations prohibiting discrimination and retaliation.

100. Furthermore, Defendant's actions were unlawful under Federal, State and City statutes.

101. As a result of the severe discrimination, retaliation, and the severe and pervasive hostile work environment perpetrated by Defendants, Plaintiff was

and is extremely emotionally distressed, faces high anxiety and is in an overall state of fear for a very significant length of time

102. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

103. The above are just some examples of the unlawful discrimination and retaliation to which Defendants subjected Plaintiff on a regular basis for the entire duration of his employment with Defendants.

104. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer from severe anxiety and severe emotional distress with significant and painful physical manifestations.

105. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer the loss of benefits and other compensation which such employment entails.

106. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

107. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants jointly and severally.

### AS AND FOR A FIRST CAUSE OF ACTION
### DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

108. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

109. Title VII states in relevant part as follows:

(a) Employer practices:

It shall be an unlawful employment practice for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to
> discriminate against any individual with respect to his compensation, terms,
> conditions, or privileges of employment, because of such individual's race,
> color, religion, sex, or national origin;

110. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race, sexual orientation, sex, gender, and national origin.

111. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by terminating and otherwise discriminating against Plaintiff as set forth herein.

### AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER TITLE VII (Not Against Individual Defendant)

112. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

113. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

114. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions

or privileges of employment because of his opposition to the unlawful employment practices of Defendants.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (Not Against Individual Defendants)

115. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

116. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

117. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (Not Against Individual Defendants)

118. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

119. The New York City Administrative Code Title 8, §8-107(l)(e) provides that it shall be unlawful discriminatory practice: "For an employer… to discharge ... or otherwise

discriminate against any person because such person has opposed any practices forbidden under this chapter..."

120. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (As Against Individual Defendants)

121. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

122. New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

123. Defendants violated the section cited herein as set forth.

## AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (As Against Individual Defendants)

124. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

125. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

126. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY
## ADMINISTRATIVE CODE
## (Not Against Individual Defendants)

127. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

128. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
      (1) the employee or agent exercised managerial or supervisory responsibility; or
      (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
      (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

129. Defendants violated the section cited herein as set forth.


## AS AN EIGHTH CAUSE OF ACTION FOR
## DISCRIMINATION UNDER STATE LAW
### (Not Against Individual Defendants)

130. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice:

"(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

131. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

132. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.


## AS A NINTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
### (As Against Individual Defendants)

133. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

134. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

135. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A TENTH CAUSE OF ACTION FOR
### DISCRIMINATION UNDER STATE LAW
### (As Against Individual Defendants)

136. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

137. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

138. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

### AS AN ELEVENTH CAUSE OF ACTION FOR
### ASSAULT & BATTERY
### (AS AGAINST INDIVIDUAL DEFENDANT BAMBURY)

139.   Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as set forth at length herein.

140.   Under New York law, assault is the: (i) intentional placing (ii) of another person (iii) in reasonable apprehension (iv) of imminent harmful or offensive contact. *See United Nat. Ins. Co. v. Waterfront N.Y. Realty Corp., 994 F.2d*

*105, 108 (2d. Cir. 1993).*

141.    Under New York law, as a result of the assault, a Defendant commits a battery
        when (i) there was bodily contact, (ii) the contact was offensive and (iii) the
        defendant intended to make the contact.

142.    Under the applicable law, a Plaintiff may invoke the doctrines of equitable
        tolling or equitable estoppel because in the current case, Plaintiff was induced
        by Defendants to refrain from filing a timely action and Defendants took
        affirmative steps to conceal their actions against the Plaintiff and the wrong
        itself was of such a nature to be self-concealing.

143.    Defendants intentionally induced Plaintiff to refrain from filing a timely action
        against the through the EEO.

144.    Defendant BAMBURY repeatedly and intentionally placed Plaintiff in
        reasonable apprehension of imminent harmful and offensive physical contact
        when he repeatedly tried to fight Plaintiff throughout Plaintiff's employment
        with the Defendants.

145.    Defendant BAMBURY did in fact intentionally make offensive contact with
        Plaintiff on multiple occasions throughout Plaintiff's employment with
        Defendants.

146.    Defendant BAMBURY committed assault and battery, and is liable to the
        Plaintiff for his injuries, for which Plaintiff claims damages in an amount to be
        determined at trial.

**TWELFTH CAUSE OF ACTION**
**VIOLATION OF RIGHTS SECURED BY 42 U.S.C. §1983**
**(Against All Defendants)**

163. Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated herein.

164. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

165. In committing the acts of discrimination and retaliation complained of herein, the Defendants acted jointly and under color of state law to deprive Plaintiff Gordon Springs of his clearly established constitutionally protected rights under the Fourteenth Amendment of the United States Constitution.

166. Plaintiff in this action is a citizen of the United States and all of the individual firefighter Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

167. An employee may bring a retaliation claim under §1983 against a supervisor who, acting under color of law, retaliates against him for opposing discrimination in the terms of his employment.

168. Defendants violated the above statute through multiple acts of unlawful gender and racial discrimination, sexual sex discrimination, national origin discrimination and retaliation.

### THIRTEENTH CAUSE OF ACTION
### (Individual Supervisory Liability - 42 U.S.C. § 1983)

169. Plaintiff incorporates all preceding paragraphs of this Complaint as if fully

restated herein.

170. Defendant Lieutenant DIDIO, was at all relevant times, a supervising officer in the FDNY, with oversight responsibility for the training, instruction and supervision of the Plaintiff and Defendants.

171. Defendant Lieutenant Firefighter DIDIO knew or should have known that the Defendant Firefighters failed to intervene to prevent the clearly discriminatory and retaliatory actions taken against Plaintiff.

172. Defendants DIDIO, FROLENZA, DE VITA, MASAUCCHI, ROGERS, BAMBURY and NIGRO as the supervisory officers of the FDNY, failed to supervise Firefighters regarding unlawful discrimination and retaliation.

173. Defendants DIDIO, FROLENZA, DE VITA, MASAUCCHI, ROGERS, BAMBURY and NIGRO as the supervisory officers of the FDNY, also knew or should have known Defendants were unlawfully discriminating against Plaintiff and failed to respond or address such actions in any way.

174. Upon information and belief, Defendants DIDIO, FROLENZA, DE VITA, MASAUCCHI, BAMBURY and ROGERS were personally involved in either ordering, or failing to take preventative and remedial measures to guard against the unconstitutional discrimination and retaliation against Plaintiff. Defendants DIDIO, FROLENZA, DE VITA, MASAUCCHI, BAMBURY and ROGERS knew, or in the exercise of due diligence, should have known, that the unconstitutional actions taken against Plaintiff by Defendants were likely to occur.

175. The failure of the individual supervisory Defendants to train, supervise and/or discipline any of the aforementioned firefighters with respect to their unlawful discrimination and retaliatory actions amounted to gross negligence, deliberate

indifference or intentional misconduct, which directly and proximately caused the injuries and damages to Plaintiff set forth herein.

**FOURTEENTH CAUSE OF ACTION**
**(EQUAL PROTECTIONS - 42 U.S.C. § 1983)**

176. Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated herein.

177. Defendants DIDIO, FROLENZA, DE VITA, MASAUCCHI, BAMBURYand ROGERS, were at all relevant times, supervising employees in the FDNY, with oversight responsibility for the training, instruction and supervision of the Plaintiff.

178. Defendants DIDIO, FROLENZA, DE VITA, MASAUCCHI, BAMBURY and ROGERS failed to intervene to prevent the clearly discriminatory and retaliatory actions taken against Plaintiff.

179. Defendants DIDIO, FROLENZA, DE VITA, MASAUCCHI, BAMBURY and ROGERS actively participated in the clearly discriminatory and retaliatory actions taken against Plaintiff

180. Defendants DIDIO, FROLENZA, DE VITA, MASAUCCHI, BAMBURY and ROGERS actively condoned other firefighters to participate in the clearly discriminatory and retaliatory actions taken against Plaintiff

181. Defendants DIDIO, FROLENZA, DE VITA, MASAUCCHI, BAMBURY and ROGERS, as supervisory officers of the FDNY, failed to supervise other Defendants regarding unlawful discrimination and retaliation.

182. Defendants DIDIO, FROLENZA, DE VITA, MASAUCCHI, BAMBURY and ROGERS also knew or should have known that Defendants were unlawfully discriminating against Plaintiff and failed to respond or address such actions in any way.

183. On information and belief, Defendants DIDIO, FROLENZA, DE VITA, MASAUCCHI, BAMBURY and ROGERS were personally involved in either ordering, or failing to take preventative and remedial measures to guard against the unconstitutional discrimination and retaliation against Plaintiff.

184. Defendants DIDIO, FROLENZA, DE VITA, MASAUCCHI, BAMBURY and ROGERS knew, or in the exercise of due diligence, should have known, that the unconstitutional actions taken against Plaintiff by Defendants were likely to occur

185. The failure of Defendants DIDIO, FROLENZA, DE VITA, MASAUCCHI, BAMBURY and ROGERS to train, supervise and/or discipline any of the aforementioned firefighters with respect to their unlawful discrimination and retaliatory actions amounted to gross negligence, deliberate indifference or intentional misconduct, which directly and proximately caused the injuries and damages to Plaintiff set forth herein.

### FIFTEENTH CAUSE OF ACTION
### (EQUAL PROTECTIONS - 42 U.S.C. § 1983)

186. Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated herein.

187. The aforementioned acts Plaintiff was forced to endure at the hands of Defendants DIDIO, FROLENZA, DE VITA, MASAUCCHI, BAMBURY and ROGERS amounts to discrimination and a violation of Plaintiff's Constitutional right to Equal Protection.

188. Defendants discriminated and committed flagrant unconstitutional acts against Plaintiff throughout Plaintiff's employment with the Corporate Defendants.

189. The ensuing acts committed by Defendants were unlawful and discriminatory, as a female or Caucasian employee would not have been subjected to the same

treatment.

## SIXTEENTH CAUSE OF ACTION
### *(Monell* Claim - 42 U.S.C. § 1983- Against City of New York)

190.  Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated herein.

191. All of the acts and omissions by the Defendants described above, with regard to the unreasonable, unlawful, and retaliatory discrimination against Plaintiff were carried out pursuant to overlapping *de facto* policies and practices of the City of New York and the Corporate Defendants, which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the Corporate Defendants.

192. The Corporate Defendants and Defendant NIGRO (in his Official capacity), by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual wrongful acts of Defendants and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

193. The actions of Defendants resulted from and were taken pursuant to the *de facto* policies and/or well-settled and widespread customs and practices of the City of New York, which are implemented by members of the FDNY. The relevant policies, customs and practices with regard to the racial, national origin, sexual orientation and gender discrimination, as well as the assault and battery perpetrated against Plaintiff are that FDNY Firefighters are permitted to discriminate against "probies" and unlawfully retaliate against said "probies" as a means to suppress the number of racial, national origin and sexual

orientation minorities in any given Firehouse across the City of New York.

194. The existence of the foregoing unlawful *de facto* unwritten policies and/or well-settled and widespread customs and practices is known to be encouraged, and/or condoned by supervisory and policy-making officers and officials of the FDNY and City of New York.

195. Notwithstanding knowledge of such an unlawful *de facto* unwritten policy, practice, and/or custom, these supervisory and policy-making officers and officials of the FDNY and City of New York, have not taken steps to terminate this policy, practice, and/or custom, and do not properly train Firefighters with regard to acts of unlawful discrimination and/or unlawful retaliation, and instead sanction and ratify this policy, practice, and/or custom through their active encouragement of, deliberate indifference to, and/or reckless disregard of the effect of said policies, practices, and/or customs upon the constitutional rights of Plaintiff and other persons similarly situated to Plaintiff.

196. The aforementioned City of New York policy, practice, and/or custom of failing to supervise, train, instruct, and discipline firefighters within the FDNY is specifically exemplified and evidenced by the misconduct detailed herein.

197. Plaintiff's injuries were a direct and proximate result of the Defendant City of New York's and its agency, the FDNY's, wrongful *de facto* policy and/or well-settled and widespread custom and practice and of the knowing and repeated failure of Defendant City of New York and the FDNY to properly supervise and train firefighters with regard to unconstitutional discrimination and retaliatory conduct.

198. Defendant City of New York knew or should have known that the acts alleged

herein would deprive Plaintiff of his rights in violation of the Fourteenth

Amendment to the United States Constitution.

199. Defendant City of New York is directly liable and responsible for the acts of the

Defendants because it repeatedly and knowingly failed to properly supervise,

train, and instruct them to require compliance with the constitutions and laws

of the State of New York and the United States.

## SEVENTEENTH CAUSE OF ACTION
## VIOLATION OF RIGHTS SECURED BY 42 U.S.C. §1981
### (Against All Defendants)

200. Plaintiff incorporates all preceding paragraphs of this Complaint as if fully

restated herein.

201. At all times relevant herein, the conduct of all Defendants were subject to the

provisions of 42 U.S.C. §1981 which guarantees all persons "the same right …

to make and enforce contracts … as is enjoyed by white citizens.".

202. Thus, there is a clearly recognized federal right pursuant to Section 1981 to be

free from the use of race-based discrimination in connection with the

enforcement of contractual rights.

203. Defendants knew, or reasonably should have known, of these rights at the time

of the complained of conduct as they were clearly established at the time.

Defendants are not entitled to qualified immunity for their acts of unlawful

discrimination and retaliation as complained of by Plaintiff.

204. The conduct and actions of Defendants, acting jointly and severally, and in

concert with each other, in unlawfully discriminating against Plaintiff with

race being a motivating factor was done intentionally, maliciously and/or with a reckless disregard for the natural and probable consequences of their acts. Defendants' discriminatory treatment of Plaintiff was done without lawful justification and was designed to cause and did cause specific and serious physical, mental, and emotional harm, pain and suffering in violation of Plaintiff's Constitutional rights as guaranteed under Section 1981.

205. As a direct and proximate result of all of Defendants' wrongful acts, policies, practices, customs and/or usages complained of herein, Plaintiff has suffered injuries and damages including, but not limited to, extreme emotional distress, pain and suffering, severe anxiety, and embarrassment, without any negligence on the part of the Plaintiff contributing thereto.

206. Plaintiff is also entitled to declaratory and injunctive relief including but not limited to a reinstatement to his position as a Firefighter and a crediting and/or a transfer of his lost wages.

207. Plaintiff is further entitled to attorneys' fees pursuant to 42 U.S.C. §§1988, pre-judgment interest and costs, and special damages as allowable by law. Plaintiff, in addition to compensatory, economic, consequential and special damages, is also entitled to punitive damages against each of the Defendants, in that the actions of each of these Defendants have been taken maliciously, willfully and/or with a reckless disregard of the constitutional and statutory rights of Plaintiff.

### EIGHTEENTH CAUSE OF ACTION
### VIOLATION OF RIGHTS SECURED BY 42 U.S.C. §1985
### (Against All Defendants)

208. Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated herein.

209. Section 1985(3) provides, in relevant part, that:

"If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

210. All of the aforementioned Defendants acted either, directly or indirectly, in unlawfully discriminating against Plaintiff on the basis of gender, race, national origin and perceived sexual orientation. Furthermore, the Defendants retaliated against Plaintiff for expressing a desire to report said discrimination by terminating Plaintiff's employment.

211. Similarly, all of the aforementioned Defendants acted, either directly or indirectly, to cover-up the unlawful discriminatory and retaliatory actions against Plaintiff.

**NINETEENTH CAUSE OF ACTION**
**VIOLATION OF RIGHTS SECURED BY 42 U.S.C. §1986**
**(Against All Defendants)**

212. Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated herein.

213. Defendants failed to prevent a conspiracy amongst the firehouse employees to deprive Plaintiff of rights protected by the United States Constitution.

214. Specifically, Defendants failed to prevent the execution of systematically discriminatory and retaliatory actions against Plaintiff.

215. As a result, Defendants violated the above statute.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all Defendants:

(a) a declaration that Defendants violated Plaintiff's federal and state civil rights;

(d) compensatory damages for the injuries suffered by Plaintiff by reason of Defendants' unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial in an amount to be determined at trial;

(c) punitive damages against the Defendants assessed to deter such intentional and reckless deviations from well-settled constitutional standards, to the extent allowable by law;

(d) damages for emotional distress, lost wages, back pay, front pay, statutory damages, medical expenses, interest;

(d) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and all other applicable laws; and

(e) such other and further relief as appears just and proper.

Dated: New York, New York
      May 12, 2018

                              DEREK SMITH LAW GROUP, PLLC

                              _____

                              Paul Liggieri, Esq.
                              One Penn Plaza, 49th Floor
                              New York, NY 10119
                              (212) 587-0760
                              *Attorneys for Plaintiff*